# NATIONAL LABOR RELATIONS BOARD v. RATH PACKING CO.

### No. 481.

Circuit Court of Appeals, Eighth Circuit.

Sept. 11, 1942.

As Modified on Denial of Rehearing
Oct. 13, 1942.

Marion A. Prowell, of Washington, D. C., Atty., National Labor Relations Board (Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Gerhard P. Van Arkel, Asst. Gen. Counsel, Malcolm F. Halliday, Asst. Gen. Counsel, A. Norman Somers, Frank Donner, William F. Guffey, Jr.; and Leslie Clifford, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

B. F. Swisher, of Waterloo, Iowa (Swisher, Cohrt & Gillilland, of Waterloo, Iowa, on the brief), for respondent.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

PER CURIAM.

In 115 F.2d 217, we sustained an order of the National Labor Relations Board, 14 N.L.R.B. 805, entered against Rath Packing Company, and directed its enforcement. In 123 F.2d 684, on subsequent application of the Board for a contempt order and the response made thereto, we appointed a special master to take testimony and report the facts. The record made before the special master and the special master's findings of fact have been duly filed, and the matter has now been fully submitted to us, on briefs and arguments of counsel.

The Board's order required that respondent "completely disestablish" the Em-

ployees Representative Council of Plant Employees of the Rath Packing Company, as a collective bargaining representative for any of its employees, and the question here is whether this has properly and effectually been done.

The Board had found that the Council was a company-fostered and dominated union, with supervisory employees filling the positions of chairman and secretary-treasurer, and with a governing board whose members were subsidized for their time losses in attending meetings and whose actions in effect were subservient to the company's wishes. In the language of the Board, the plan and its operation were such that "substantially the same individuals have been continually in office."

Shortly after the Board's decision and order of August 18, 1939, the governing board of the Council met in the plant cafeteria and purported to disband the organization. The chairman and the secretary-treasurer, who were supervisory employees of the company, then picked up the records and papers of the Council and withdrew from the meeting. The other members of the old governing board, however, remained, and the formation of a new union for the plant employees was suggested. No specific plans were agreed upon, but one of the leaders thereafter took the matter up with an attorney. The group then held meetings with the attorney, and, when the drafting of satisfactory articles of association had been completed, they invited the employees of the plant to attend a mass meeting at the county court house. About fifteen per cent of the plant employees were present, and about two-thirds of these came forward at the meeting, in response to a solicitation, to sign up as members of the new organization. An election was held among the members a short time later, and three of the four officers' posts in the new union again came to rest in the hands of employees who had been leaders of the old Council. The new organization had been named the Independent Packinghouse Workers' Association.

While all of this was going on, Rath Packing Company did not make any general disavowal of the old Council, and the special master found from the evidence that, at the time the Independent was created, "respondent's employees as a whole had no knowledge that the Council was dissolved and that respondent had withdrawn all recognition from the Council and that employees were free to join or not to join any other labor organization and that respondent was indifferent as to what they might do in that regard."

More than a year had elapsed from the date of the Board's order until the enforcement order of this Court was issued. At the time the matter was submitted to us on the Board's petition for enforcement, the Independent had been in existence for approximately eleven months. The facts with respect to both the old Council and the new Independent were fully known to respondent, but it chose not to inform either the Court or the Board of the existing situation. It argued here that it had in no way been guilty of any unfair labor practice in respect to the Council and that the Board had no right to disturb such relationships as existed between them. Inasmuch as the old Council was no longer purporting to function and respondent now contends that it had ceased to exist, it is difficult to avoid the conclusion that respondent's chief aim and interest, in resisting the petition for enforcement, were to move as laggingly as possible in allowing the door to become opened to the free selection of a collective bargaining representative by its employees. Complementary significance is derived from the fact that, throughout this whole period, an outside union had unsuccessfully been seeking to gain a dominant position in the plant and that, even after the issuance of our enforcement order, supervisory employees of respondent had continued to take occasion to disparage this affiliated organization to the employees, although the evidence does not show that such disparagement was directed by respondent.

■ The purpose of the Board's order, in requiring that respondent "completely disestablish" the old Council, was manifestly not to permit a mere mechanical separation or casual dismissal, but to compel a good faith disavowal of the disqualified union, under such circumstances as could reasonably be expected to convince the body of its employees that, from that time on, no particular union would bear the employer's favor and none would be burdened with its hostility, and that, so far as the company's interest in the matter was concerned, every employee in the plant was completely free to make any choice of collective bargaining representative that he

542

might desire. Compare National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 600, 61 S.Ct. 358, 85 L.Ed. 368; National Labor Relations Board v. Falk Corporation, 308 U.S. 453, 462, 60 S.Ct. 307, 84 L.Ed. 396; Westinghouse Electric & Mfg. Co. v. National Labor Relations Board, 2 Cir., 112 F.2d 657, 660.

Respondent had not attempted to disavow the Council and to advise its employees that the organization's illegal status was being disestablished, until after our enforcement order was issued. Sixteen months elapsed after the Board's order before respondent undertook to post the required notices. By that time, as we have indicated, the Independent had been securely launched in the plant. It is obvious that the Board's decision and order with respect to the Council, although not acquiesced in by respondent, brought about the designing, construction, launching and initial manning of the Independent, as a substitute organization, by those who had served as leaders of the Council.

It is argued that any accusation that respondent participated in the formation of the Independent or that it has in any way attempted to dominate that organization is wholly unwarranted on the record, and that no right therefore exists to deal with the relations between respondent and the Independent here. The fact that the company may have stood mutely by, while the incidents in connection with the Independent were transpiring, can hardly be accepted as controlling. The antithetical aspects of the situation are of equal importance in our present consideration. Even though respondent had no direct part in the organization of the Independent, it would not have complied with the Board's order to "completely disestablish" the Council, if it allowed its voice to remain silent until the situation had been so reshaped in the plant that a mere disavowal of the old Council could no longer reasonably be expected to dissipate the effect of the illegal restraint which had previously existed and to lead the employees to believe that their collective bargaining rights had actually been emancipated.

We are convinced that, even though respondent had no direct part in the formation of the Independent, the prompt sponsorship of that organization by the same group of men who had been identified with the old company-dominated union, in the absence of notice from the respondent to its employees that it would no longer deal with the Council and that it was indifferent as to what organization they joined, made the Independent the alter ego or the successor of the old Council and created a condition where respondent's purported disavowal of the old organization more than a year later cannot be regarded as having completely disestablished the Council and having fully restored to the employees their collective bargaining rights. As we declared in our previous opinion, at page 685 of 123 F.2d, "To avoid having a new labor organization regarded as the alter ego or the successor of an old labor organization that was subject to employer domination, it must appear that, prior to the formation of the new organization, the employees were advised by their employer, in substance, that all recognition of the old organization by him had ended, that they were entirely free to join or not to join any other labor organization, and that the employer was completely indifferent as to what organization they joined."[1]

The purpose and intent of the order of the Board which this Court ordered enforced were to eliminate the Council as a

[1] The apparent relationship of the Independent to the Council, in the minds of some of the employees at least, is shown by the fact that, after respondent finally posted notices purporting to disestablish the Council, the Independent thought it necessary to make the following explanation in its bulletins: "We have received a number of inquiries concerning the notice which is posted on some of the clocks concerning the Employees Representative Council. * * * We cannot understand why this notice should be confusing. * * * It in no way means that the company does not recognize this organization. It does not mean that the I. P. W. A. cannot bargain with the Rath Packing Co."

While the Company never recognized the Independent as the exclusive bargaining representative of its employees, because the union never had a majority of the plant employees as members, the Independent sought to impress the strength of its internal position and its efficacy upon the minds of the employees by such statements in its bulletins as the following: "We are very glad to announce that the I. P. W. A. gained wage increases for 54 of our members working in the freez-

bargaining agent and to eradicate its effects upon the freedom of choice of respondent's employees for the purposes of collective bargaining. No mere change of name or change of structure or substitution of a formally different inside organization, without notice by respondent to its employees of the complete disestablishment of the Council and the full restoration of their bargaining rights can be permitted to defeat the purposes of the Board's order and the decree of this Court. The respondent has placed too literal an interpretation upon the order and the decree and has disregarded their purpose and the evil they were intended to remedy. That the Independent might have come into existence if respondent had notified each of its employees, prior to the formation of the Independent, that the Council had been abandoned and would not be recognized, and that the employees were free to join or not to join any labor organization, is beside the point. The respondent neglected to do the thing which would have given to the Independent a status separate and distinct from that of the Council. That some recognition was accorded by respondent to the Independent as a bargaining agent for the employees who were members of it and that such employees regarded it as their representative is apparent.

■ We hold that, under the circumstances, the respondent has not complied with the decree of this Court, and

that respondent and its officers are therefore in contempt. In order to purge themselves of such contempt, the respondent and its officers are directed to take the following action: Withdraw from the Independent the recognition which has been accorded to it and refuse hereafter to treat such organization as a collective bargaining representative for any of respondent's employees; post notices in conspicuous places throughout the plant, for a period of at least thirty days, that, pursuant to the order of this Court, all recognition has been withdrawn from the Independent and that respondent will no longer treat or deal with such organization as a collective bargaining representative for any of its employees; include in such posted notices a further provision that respondent will hereafter be completely indifferent as to what labor organization any of its employees may choose to join; notify each of its supervisory employees in writing, within ten days hereof, not to make any derogatory remarks in the plant about any labor organization and not to interfere in any other way with the right of any employee to join or not to join any labor organization; pay all the costs of this proceeding, including witness fees, reporter's fees, and the fees and expenses of the special master; and file with the Clerk of this Court, within forty days of the date hereof, a report in writing showing what compliance has been made with this order and mail a copy of such report to petitioner.

er. We also gained 7 more increases on the cutting floor. This proves that we can and will help our members." "We are glad to announce that more raises have been gained through the I. P. W. A. The grievance committee met with the superintendents last Wednesday. Thirteen raises were gained for workers of the fresh meat department. Several other raises were gained for workers in various other departments."