James WILLIAMS, Jr., et al.

v.

IBERVILLE PARISH SCHOOL BOARD,
etc., et al.

Terry Lynn DUNN et al.

v.

LIVINGSTON PARISH SCHOOL
BOARD, etc., et al.

Welton J. CHARLES, Jr., et al.

v.

ASCENSION PARISH SCHOOL BOARD,
etc., et al.

Donald Jerome THOMAS et al.

v.

WEST BATON ROUGE PARISH
SCHOOL BOARD, etc., et al.

Civ. A. Nos. 2921, 3197, 3257, 3208.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Sept. 5, 1967.

See also D.C., 268 F.Supp. 923.

A. P. Tureaud, New Orleans, La., Norman Amaker, Franklin White, New York City, for plaintiffs.

Joseph Ray Terry, Jr., Hugh W. Fleischer, New Orleans, La., for the United States.

Jack P. F. Gremillion, Thomas W. McFerrin, Baton Rouge, La., for State of Louisiana.

Sam J. D'Amico, John F. Ward, Baton Rouge, La., for Iberville Parish School Board.

Duncan S. Kemp, Amite, La., W. M. Dawkins, Livingston, La., for Livingston Parish School Board.

Aubert Talbot, Napoleonville, La., for Ascension Parish School Board.

Samuel C. Cashio, Maringouin, La., Charles Dameron, Baton Rouge, La., for West Baton Rouge Parish School Board.

WEST, District Judge:

Plaintiffs bring this motion to have defendants in the above captioned cases held in civil contempt for failure to obey this Court's order of August 7, 1967. The order referred to is an integration decree in the exact words and form of that entered by the United States Fifth Circuit Court of Appeals in the case of United States of America and Linda Stout, etc. v. Jefferson County Board of Education, et al., 372 F.2d 836 (CA 5–1966), aff'd with modifications, March 29, 1967, 380 F.2d 385, which decree was entered in these cases pursuant to mandate issued to this Court by the United States Fifth Circuit Court of Appeals.

When the motion came on for hearing, counsel for plaintiffs advised the Court that they were satisfied that defendants in the West Baton Rouge Parish and Ascension Parish cases had substantially complied with the decree, and hence they wished to dismiss this matter as to those defendants. The matter was then heard as to the defendants in the two cases involving the Iberville Parish school system and the Livingston Parish school system.

Since the decree entered in this case was actually prepared by the Court of Appeals rather than this Court, I can only attempt to interpret it in light of what I believe that Court must have had in mind when they wrote it. I believe that the Court merely intended the decree to assure all students their constitutional right to equal, non-discriminatory educational opportunities, and nothing else. For indeed, if the decree was really intended to do anything beyond this, such as compelling the defendants to use precise language in notices, or employing one and only one means of notice, etc., regardless of the circumstances involved, the entering of such a decree would certainly have amounted to an administrative decree rather than a judicial judgment and hence would amount to an act far beyond the Court's judicial powers. I cannot believe the Court of Appeals intended to enter such an administrative decree. So I must conclude that the actions of the School Board, when looked at for the purpose of deciding whether or not its members have committed a civil contempt, must be examined in light of the purposes for which the decree was entered.

Under Section II(c) of the Fifth Circuit Court of Appeals decree, which, as stated above, was entered in this case pursuant to its mandate, a so-called free choice period of August 1, 1967 to September 1, 1967 was provided during which all students "shall be required to exercise a free choice of schools" which

they wish to attend during the ensuing year. Under Section II(d) of the decree it is provided that if a student does not exercise his choice of school, (even though under Section II(b) the exercise of such a choice is mandatory,) within a week after school starts, he shall then be assigned to the school nearest his home "where space is available under standards for determining available space which shall be applied uniformly throughout the system * * *."

■ Plaintiffs initially sought to have defendants held in civil contempt for failure to obey this portion of the mandate. (Since the exercise of choice is made mandatory by the decree, it might be that contempt proceedings should be brought against those failing to make a choice rather than against the School Board.) But in any event, since the decree only orders the defendants to assign to schools nearest their home those students who have failed to exercise their "mandatory" freedom of choice within a week after school opens, and since that week has not yet expired in the case of the Livingston Parish schools and has only this day expired in the case of the Iberville Parish schools, there is no way, as of now, to conclude that these defendants are in civil comtempt of that provision of the decree. They have simply not yet had the opportunity to comply. In Court, counsel for plaintiffs conceded that this is so and voluntarily agreed that this alleged violation is no longer before the Court.

Plaintiffs also seek to have defendants held in civil contempt for failure to comply with Section II(f) of the decree. That Section reads:

"On the first day of the choice period there shall be distributed by first-class mail an explanatory letter and a choice form to the parent (or other adult person acting as parent, if known to the defendants) of each student, together with a return envelope addressed to the Superintendent. Should the defendants satisfactorily demonstrate to the court that they are unable to comply with the requirement of distributing the explanatory letter and choice form by first-class mail, they shall propose an alternative method which will maximize individual notice, i. e., personal notice to the parents by delivery to the pupil with adequate procedures to insure the delivery of the notice. The text for the explanatory letter and choice form shall essentially conform to the sample letter and choice form appended to this decree."

But the Court concludes, for the reasons hereinafter stated, that defendants have substantially complied with those provisions of the decree.

It has been obvious from the start that the stereotyped decree ordered by the United States Fifth Circuit Court of Appeals to be entered in these cases would not, in all instances, be adaptable to each specific case. It has been obvious to anyone who has taken the time to really consider the individual problems of the various school systems that one stereotyped decree could not fit the needs of every case. The United States Fifth Circuit Court of Appeals at least partially recognized this fact when, in Section II (f) they provided:

"Should the defendants satisfactorily demonstrate to the court that they are unable to comply with the requirements of distributing the explanatory letter and choice form by first-class mail, they shall propose an alternative method which will maximize individual notice, i. e., personal notice to parents by delivery to the pupil * * *." etc.

■ When, as is the situation in these cases, full, complete and adequate notice of freedom of choice had, as a matter of fact, already been sent to all students and their parents within a short time preceding the entry of the decree involved herein, and when, as is the case here, the Court determines that such notices as were given by the School Board, even though not given within the exact dates or in the exact manner prescribed by the decree, did, in fact, accomplish substantially the same results

sought by the decree, it is incumbent upon the Court to conclude that the decree has been substantially complied with, and that the purposes of the decree have been accomplished, and that the defendants are not in civil contempt thereof. Contempt will not be found where there is a fair ground of doubt as to the violation of the Court's order, Heikkila v. Barber, D.C., 164 F.Supp. 587, and in determining whether an order, judgment, or decree has been violated, so as to constitute contempt, such order, judgment or decree will not be expanded by implication beyond the meaning of its terms when considered in the light of the issues and the purposes for which the suit was brought. Denver-Greeley Valley Water Users Association v. McNeil, 10 Cir., 131 F.2d 67.

 In order to find contempt, the facts found must constitute a plain violation of the decree when read in light of the purposes for which it was entered. Cohn v. Kramer, 6 Cir., 136 F.2d 293. Furthermore a civil contempt exists only when there is a disobedience of court orders *to the damage of the other party*. Boylan v. Detrio, 5 Cir., 187 F.2d 375. If there has been a disobedience of a Court's order to the damage of the other party, civil contempt proceedings may then be instituted only by the party primarily in interest. MacNeil v. United States, 1 Cir., 236 F.2d 149, 61 A.L.R.2d 1075, cert. den. 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119.

With these basic principles in mind, and considering the pleadings and evidence before the Court, the conclusion is inescapable that none of the defendants herein are, at this time, in contempt of this Court.

First of all, there is grave doubt as to whether or not the parties bringing this action for contempt have any standing to do so. These plaintiffs originally (several years ago) brought these suits as class actions, ostensibly representing members of a class of people with whom they were "similarly situated." The direct interest of these particular plaintiffs is, at this time, quite questionable, and it is highly doubtful that these particular plaintiffs any longer have the right to represent a class of people with whom they were, many years ago, "similarly situated." There is no showing whatever that the plaintiffs are any longer "similarly situated" with those of the class they now purport to represent, and there is not even an allegation made that the parties bringing this contempt action are "parties primarily in interest" or that they, individually, have in any way been damaged by the alleged disobedience of which they complain.

 But in any event, without passing upon the question of whether or not plaintiffs have proper standing to bring this action, it is quite clear that they have failed to show, by any credible evidence whatsoever, that a "plain violation of the decree," when read in light of the purposes for which it was entered, has occurred. Contempt of court is a grave thing and the Court is not disposed to engage in strained constructions to spell out some theoretical or abstract violation. N.L.R.B. v. Standard Trouser Company, 4 Cir., 162 F.2d 1012. The fact remains that defendants have not violated Section II(d) as yet because they have obviously not yet had time to comply, and they have not, in this Court's opinion, violated Section II(f) of the decree. The notices concerning freedom of choice were given to all students and parents, in the utmost of good faith, in such a way as to "maximize individual notice," and, in the opinion of this Court, said notices were thus given in substantial compliance with Section II(f) of the decree, even though the decree had not, at that time, been received by defendants. As a matter of fact, while the decree set forth a notice period of August 1 to September 1, the fact remains that the defendants were not even served with the decree until August 14.

In the case of Iberville Parish, the right of freedom of choice had been widely publicized, and the choice period of March 21 through April 28, 1967, had been used. All students and parents

were notified in detail of their right of free choice in accordance with the then existing orders of this Court. That the notices were effective is evident from the fact that the School Board received 595 requests from Negroes to enroll in previously all white schools as compared with only 20 such requests received the previous year, and from the further fact that the plaintiffs were unable to present to the Court one single instance where a student or parent was unaware of their right to freely choose the school which they wanted to attend. Thus the objects and purposes of the Jefferson decree in this respect had already been accomplished. To require additional notice after receipt of the decree would have been to require something that could have no effect other than to possibly delay the effective opening of the schools in Iberville Parish for at least one month. It could, in light of the existing circumstances, have served no other purpose.

In the case of Livingston Parish, there was also ample notice given a short time prior to receipt of the decree in question. Written notice of the right of freedom of choice, together with choice forms, were sent by the School Board to all parents on May 24, 1967, by handing them to the students for delivery to their parents. Notices were also posted on bulletin boards and in the newspapers. Again, plaintiffs were unable to even state to the Court that they were aware of a single instance where a student had not been adequately advised of his right to freely choose the school he wished to attend.

Thus in both instances, it is the opinion of this Court that for this school year, at least, and in view of the circumstances existing at the time the August 7 decree was entered herein, adequate notice has, in fact, been given by the defendants to the students and parents in their respective school systems, and that the decree entered by this Court, when viewed in light of the apparent purposes for which it was entered, has been substantially complied with. To require additional

notices to be given this year, when notices which are considered by this Court to have been completely adequate were given by defendants to all students and parents entitled thereto within a very short time prior to the entry of the "Jefferson-type decree" herein involved, and particularly when such notices as were given are now considered by this Court to be in substantial compliance with Section II(f) of that decree when read in light of the purposes for which it was entered, would amount to nothing short of the grossest kind of harassment. And this conclusion is all the more justified when consideration is given to the fact that not one single bit of evidence has been presented to this Court to show that a single person has complained that he did not receive adequate notice of his right to freely choose the school which he wished to attend. It is thus clear beyond peradventure that the notices given by these defendants to the pupils and parents in their respective school systems did, in fact, "maximize individual notice" to an extent at least equal to that contemplated by the decree. Thus, since the purposes of the decree have been satisfied in this respect, and in view of the special circumstances of these cases, i. e., adequate notice having already been given within a short time prior to the receipt of the decree; the lateness of receipt of the decree by the defendants; the early opening of school in these parishes, making it impossible to give the full month notice required by the decree after receipt of the decree and before commencement of school; the fact that to require defendants to give an additional notice after receipt of the decree when in fact an adequate notice had already been given, would have required a delay in the opening of school for at least one month, it is obvious that these defendants cannot be held in civil contempt of Court.

In the future, there would seem to be no reason why the exact provisions of the decree, with respect to notice required as set forth in Section II(f) thereof, absent prior Court approval of deviation therefrom, could not be complied with, and de-

fendants will, of course, be expected and required to do so.

For these reasons, plaintiffs' motion to have defendants held in civil contempt of this Court will be denied.