Nancy Anne SPANGLER et al., Plaintiffs,
and
United States of America,
Plaintiff-Intervenor,

v.

PASADENA CITY BOARD OF
EDUCATION et al.,
Defendants.

Civ. No. 68–1438–R.

United States District Court,
C. D. California.

Aug. 12, 1974.

See also, D.C., 375 F.Supp. 1304.

ACLU Foundation of Southern California, Los Angeles, Cal., A. L. Wirin, Fred Okrand, John D. O'Loughlin and Jill Jakes, for plaintiffs.

James Stotter, II, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-intervenor United States of America.

Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., Jerome D. Meier, Pasadena, Cal., for defendants.

Charles B. Johnson, Pasadena, Cal., for petitioner to Show Cause.

## JUDGMENT, OPINION AND ORDER

REAL, District Judge.

Petitioner, Charles Johnson, the father of two school age children in at-tendance at the Pasadena Unified School District, has moved the court for an order to show cause why the respondent Pasadena City Board of Education (hereinafter Board)[1] should not be held in civil contempt for its failure to comply with the provisions of the order of this court concerning the desegregation of that school system in general and the hiring of administrative personnel in particular. Accordingly, the moving party objects to the appointments of Willard A. Craft as Acting Assistant Superintendent of Elementary and Secondary Education, John F. McHale as Acting Assistant Superintendent for Personnel and Supportive Service, Mrs. Anna Mary Hession as Acting Administrative Director of Elementary Curriculum, Ms. Louise Coover as Principal of Wilson Junior High School, and Dr. John Mike Kellner as Principal of the "Fundamental School." He requests this court to declare said appointments void *ab initio*, to order the respondents to institute hiring procedures in conformity with this court's original order of January 22, 1970 (hereinafter known as the Pasadena Plan), and to level such sanctions, including reasonable attorneys fees, as this court feels appropriate to punish the Board's failure to comply with the original hiring procedures set forth in the Pasadena Plan. *See,* Spangler v. Pasadena City Board of Education, 311 F.Supp. 501 (C.D.Cal. 1970).

In connection with the hiring of Administrative personnel, the Pasadena Plan provides for "[a] positive recruitment program paralleling the teacher recruitment program [which] will actively seek out minority group administrators, supervisors, and counselors who are interested in employment with the Pasadena Unified School District."[2] Never-

---

1. The Board is currently composed of Henry Marcheschi, President, Drs. Henry S. Myers, Jr. and Richard Vetterli, and Messrs. Wyman W. Newton and Samuel Sheats. This order to show cause is only directed to the first four Board members just enumerated since Mr. Sheats took no part in the activities which allegedly amount to contempt of this court's order.

2. In its pertinent part, the Recruitment and Selection of Administrators Plan stipulated that ". . . bulletins concerning job opportunities will be sent to college and uni-

theless, in contravention of these established procedures, the Board appointed Messrs. Craft and McHale, and Mrs. Hession on July 10, 1973 to their respective positions by a vote of three to two, with Messrs. Sheats and Marcheschi, and Superintendent Cortines, the non-voting Board member, dissenting in the face of the alleged illegality of the action. Thereafter, the Board appointed Dr. Kellner and Ms. Coover to their respective principalships; but, on the occasion of these latter two appointments, only Mr. Sheats dissented, with Mr. Marcheschi and Superintendent Cortines, relying on the advice which they had solicited from Los Angeles County Counsel, being then satisfied of the legality of the Board's actions.

It is beyond question that, if the Board had been acting upon permanent administrative appointments, such appointments would have been illegal in light of the Board's failure to advertise such positions, to submit ensuing applications to a committee for its evaluation and determination to act upon recommendations stemming from that committee and from the Superintendent, and finally, to take affirmative steps to ensure minority applications for these positions. It is the Board's current contention relative to these appointments that their "temporary" nature precluded application of the normally prescribed appointment procedures and further justified the reliance of the Board upon the advice of Los Angeles County Counsel to the effect that said appointments were, in fact, legally within the purview of the Pasadena Plan. (See, Marcheschi Affidavit, p. 3)

*The Standing of Petitioner*

Initially, it is incumbent upon the court to determine whether the petitioner has the requisite standing to bring the instant order to show cause regarding civil contempt to the court's attention; for the petitioner is neither the named representative of the class of school aged children affected by the original Pasadena Plan nor counsel of record for that class.

■ Relying on Williams v. Iberville Parish School Board, 273 F.Supp. 542 (E.D.La.1967), the defendants maintain that, where, as here, representation of the class is adequate and compatible with the interests of the entire class, no individual member of the class may appear *in propria persona* to vindicate an alleged violation of class rights. However, the court in *Williams, supra,* merely indicated that civil contempt proceedings may be instituted only by "parties primarily in interest" in the litigation or by parties who ". . . have in any way been damaged by the alleged disobedience of which they complain." *Id.* 273 F. Supp. at 545. In addition, as the Ninth Circuit has pointed out in Gregory v. Litton Systems, Inc., 472 F.2d 631 (1972), "broad power [has been] given to the district court to make various orders for the protection of a class. Fed. R.Civ.P. 23(d)." It appears axiomatic, therefore, that the father of two school age children, who is acting, in essence, as a guardian ad litem and whose children are affected by an order of this court, has a "primary interest" in ensuring that the orders of the court relative to his childrens' educational opportunities are dutifully enforced. As a parent, peti-

versity placement offices and other professional organization offices. In these bulletins, minority candidates will be especially encouraged to apply . . .

"Vacancies in these positions are filled from eligible lists established by examination. At the present time the examination consists of an oral interview, evaluation of training and evaluation of experience by a committee appointed for this purpose. Announcements for these positions are distributed to all school personnel, to college and university

placement offices in Southern California and to a mailing list recommended by the Department of Intergroup Education . . . . The announcement contains the title of the position, the minimum requirements for entrance, desirable qualifications, job duty statement and the salary . . .

"When vacancies occur, the top five names on the eligible list are referred to the appointing authority for consideration. All appointments must be approved by the Superintendent."

tioner has standing and is permitted to make an appearance in this action to apprise the court of any non-compliance with said order.[3] *Compare,* Federal Trade Commission v. A. McLean & Sons, 94 F.2d 802 (7th Cir. 1938) [where the court noted that "the protection of private rights" is cardinal to a civil contempt proceeding] with McCrone v. U. S. A., 307 U.S. 61, 63 n. 4, 59 S.Ct. 685, 83 L.Ed. 1108 (1939); *See also,* Kaplan, 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 392 n. 137 (1967); Practicing Law Institute, Class Actions at p. 178 (1973).

### The Violation

Turning then to the merits of the case, the court notes that the Pasadena Plan, relative to the filling of administrative positions, embraced a ". . . total of 133 non-teaching certified assignments [which] include *all* school administrators, directors, supervisors, consultants, counselors, school psychologists and others . . ." (emphasis supplied). The administrative posts, which the respondents summarily filled in alleged violation of the broad mandates of the Pasadena Plan and which form the focal point of the instant inquiry, clearly fall within the parameters of the court's directives concerning the hiring of administrative personnel. Yet the Board, mainly through the protestations of its President, Mr. Marcheschi, indicates that "none of the past or present Board members, with one exception [*i. e.,* Mr. Sheats,] has ever suggested that the Board was required to follow the procedures set forth in the Recruitment and Selection of Administrators Section of

the Pasadena Plan when making or approving temporary appointments of persons to acting administrative positions or permanent appointments of persons reporting directly to the Superintendent." (Marcheschi Affidavit, p. 2). In essence, then, it is the Board's position that its lack of intent in failing to comply with the court's order, coupled with its reliance on the advice of counsel and the insufficiency of the evidence necessary to prove a violation, precludes the possibility of a contempt citation in the instant matter.

In general, the lack of malicious intent or the presence of a good faith belief in the rectitude of one's position cannot serve to "sterilize conduct otherwise contemptuous." Babee-Tenda Corp. v. Scharco Manufacturing Co., 156 F.Supp. 582, 587 (S.D.N.Y.1957); *See also,* Land v. Dollar, 190 F.2d 623 (D.C. Cir. 1951), cert. dism. per mot. of petitioner 344 U.S. 806, 73 S.Ct. 7, 97 L.Ed. 628 (1952); Sucrs. De A Mayol & Co. v. Mitchell, 280 F.2d 477 (1st Cir. 1960), cert. den. 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195; Folk v. Standard Business Forms, Inc., 270 F.Supp. 147 (D.C.N.C. 1967); Rosenstiel v. Rosenstiel, 278 F. Supp. 794 (D.C.N.Y.1967); Landman v. Royster, 354 F.Supp. 1292 (D.C.Va. 1973). Likewise, the Board's reliance on the advice of the Los Angeles County Counsel, who in a rather cryptically worded letter dated July 31, 1973 erroneously concluded that the Board's appointments did no offense to the Pasadena Plan, may not serve to immunize the Board from acts which are contemptuous in and of themselves.[4] Land v.

---

3. For the record it should be noted that the plaintiff-representatives of the class joined the petitioner's motion to hold respondents in civil contempt of this court's 1970 ruling. Thus, even if the petitioner were deemed to have insufficient standing to prosecute this contempt proceeding, the court could nonetheless consider the matter in light of the plaintiff's participation herein.

4. The Board seems to have taken further, albeit unwarranted, comfort in the assurances proferred by the Department of Health, Education and Welfare that federal funding

would continue to flow to the Pasadena schools if the Board honored certain commitments to H.E.W. concerning the continued desegregation of the school system. The Board's agreement with H.E.W. differs from the provisions set forth in the Pasadena Plan in a number of instances, most of which concern the mailing lists to be obtained from the Department of Intergroup Education, the "minimum" as opposed to the "main" requirements under the plan; the elimination of the need to "positively seek out" minority employees, and the number of individuals who

Dollar, supra; U. S. v. Seavers, 472 F.2d 607 (6th Cir. 1973); Heyman v. Kline, 344 F.Supp. 1088 (D.C.Conn. 1970), aff'd in part and rev'd in part 456 F.2d 123 (2d Cir. 1972), cert. den. 409 U.S. 847 (1972); Theriault v. Carlson, 353 F.Supp. 1061 (D.C.Ga.1973); U. S. v. Wefers, 314 F.Supp. 137 (D.C. N.H.1970) vacated 435 F.2d 826 (1st Cir. 1970). It should be noted, however, that both the presence of a bona fide belief in the rectitude of one's actions and the reliance upon the advice of counsel may operate to mitigate the severity of the contempt sanction. U. S. v. Johnson, 52 F.Supp. 382 (N.D.N.Y.1943).

■ Yet, the Board's effort to circumvent the thrust of the Pasadena Plan by making "temporary" appointments which, under their stated terms, conceivably could have been renewed on a yearly basis, actually operates as a two-pronged assault upon the Board's present position; for not only does this conduct comprise acts in contempt of this court's order but also, in light of a majority of the Board's expressed opposition to the Pasadena Plan, appears to preclude any element of good faith in connection with it. *See*, Spangler v. Pasadena City Board of Education, 375 F.Supp. 1304 (C.D.Cal.1974). Thus, under the guise of making "temporary" administrative appointments of a continuing nature, the Board could "permanently" frustrate the aims of the Plan relative to the hiring of minority administrators. Constitutionally, this court cannot and will not abide the transparency of such an action.

The Board maintains, however, that the evidence adduced by the petitioner is not of a "clear and convincing" nature and is incapable, therefore, of supporting a civil contempt citation. While it is generally believed that the burden of proof necessary to support a claimed civil contempt citation must be of a

"clear and convincing" nature [Washington v. Central of Georgia Ry. Co., 174 F.Supp. 33 (M.D.Ga.1958), aff'd. sub. nom. Marshall v. Central of Georgia Ry. Co., 268 F.2d 445 (5th Cir. 1959), cert. den. 361 U.S. 943, 80 S.Ct. 407, 4 L.Ed. 363 (1959); Hart Schaffner & Marx v. Alexander's Dept. Stores, Inc., 341 F.2d 101 (2d Cir. 1965); Stringfellow v. Haines, 309 F.2d 910 (2d Cir. 1962); N. L. R. B. v. Alamo Express, Inc., 395 F.2d 481 (5th Cir. 1968); American Optical Co. v. Rayex Corp., 291 F.Supp. 502 (S.D.N.Y.1967), aff'd. 394 F.2d 155 (2d Cir. 1968), cert. den. 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968); Rosenstiel v. Rosenstiel, *supra*; Benner v. Philadelphia Musical Soc., Local 77, of the American Federation of Musicians, 233 F.Supp. 108 (E.D.Pa. 1964)], the evidence adduced in the course of the instant hearing was uncontroverted to the effect that the acts of which the petitioner currently complains actually occurred. Since the Board admits to having made the appointments now under scrutiny and since the defenses asserted by the Board can avail it little, there only remains for the court to appraise the legal effect of the appointments in light of the concepts envisioned in the Pasadena Plan.

### *Proposal to Purge*

■ ■ Notwithstanding all the foregoing, the Board informs the court—and quite rightly—that the purpose of a civil contempt proceeding is actually to secure compliance with a lawful court order and not to punish its initial violation. Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Brotherhood of Locomotive Firemen & Engineermen v. Bangor & A. R. R., 127 U.S.App.D.C. 23, 380 F.2d 570, 581 (1967), cert. den., 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967); De Parcq v. U. S. District Court, 235 F.2d

---

are to sit on the administrative review board. It should go without saying that neither H.E.W.'s understanding of this court's orders, nor its representations to the Board in regard thereto, can serve to permit the Board

to act with impunity in contravention of those orders. Neither the Pasadena City School Board nor the Department of Health, Education and Welfare are the final arbiters of the intendment of this court's orders.

692 (8th Cir. 1956); N. L. R. B. v. Rath Packing Co., 130 F.2d 540 (8th Cir. 1942). Accordingly, the Board reasons that its instructions to the Superintendent on May 7, 1974 to forthwith bring the school district relative to the disputed administrative appointments into full compliance with the provisions of the Pasadena Plan, coupled with the actual advertising of these positions as specified by the Plan, serve to purge the contempt of this court's order, if any contempt there were.[5] Yet, it was not merely the Board's failure to advertise the administrative positions under scrutiny which comprises its contemptuous behavior but rather its *making* of the appointments, *absent* the procedures specified in the Plan. Thus, the purportedly purgative actions of the Board—unaccompanied, as they are, by a vacating of the unlawful appointments—really are tantamount to nothing more than a *proposal* to purge the contempt and, as such, do not serve as an effective defense to the Board's initial (and continuing) contempt of the court's order as enunciated in the Pasadena Plan.

### The Purgation

As the preceding analysis readily reveals, this court has determined that the Pasadena City Board of Education is in contempt of the mandates of the Pasadena Plan.[6] As a consequence, the Board shall within 5 days of the filing of this opinion vacate the disputed appointments and otherwise bring itself into conformity with the Pasadena Plan as more fully specified herein or, in lieu thereof, to pay $500.00 per day until such time as the Board complies with the orders of this court as they relate to the hiring of administrative personnel.

Petitioner has, by his actions herein, brought to the attention of the court what could conceivably be a hiatus in the administrative functions of the Pasadena Unified School District. Since no

suggestion for modification has been forthcoming from the Board to obviate any future misunderstanding as to the parameters of the Pasadena Plan as it pertains to "temporary" or "acting" appointments of all administrative vacancies, the Pasadena Plan is now modified by the Court in the following respects:

### Modifications in Procedures for the Selection of Temporary Administrative Personnel

1. All administrative vacancies may be filled by temporary appointment by the Superintendent of Schools, but such appointments shall terminate 30 days subsequent thereto unless such appointment shall be extended for 30 additional days by action of the Pasadena City Board of Education. After this time, the position shall be filled according the the Personnel Selection Procedure enunciated in the Pasadena Plan.

2. All such "acting" or "temporary" administrative appointments shall be approved by a majority of an Administrative Appointments Board, comprised of 3 members selected by a vote at large of the entire faculty and administration of the Pasadena Unified School District and one member appointed by the Superintendent of Schools of the Pasadena Unified School District and one member appointed by a majority of the members of the Pasadena City Board of Education.

3. Notwithstanding the provisions of paragraph 2 of this Section, any extension of the 30 day termination period relative to temporary or acting administrative personnel, attempted to be undertaken by the Pasadena City Board of Education, shall be approved by the Administrative Appointments Board in order to be effective.

4. Under the guidelines set forth in this Section, no temporary or acting

---

5. Once again acting upon the advice of the Los Angeles County Counsel, the Board did not vacate the illegal appointments in question since it felt that an initiation of the pre-scribed procedures was all that was minimally required to purge the contempt.

6. *See*, n. 1, *supra*.

administrative personnel may serve in that capacity for more than 60 days except upon unanimous concurrence of the Administrative Appointments Board which shall in no event be given for a period to exceed an additional 90 days.

5. The district maintains a policy of no discrimination in employment because of race, creed, color, age, sex, marital status, national origin or political beliefs.

### Attorney's Fees and Conclusion

While it is true that the petitioner has performed a valuable public service by calling the Board's peccadilloes to the attention of this court, it does not seem equitable that he, as an attorney at law impregnated with the public trust, should receive payment for his vindication of both a private and a public right. His actions comport with the highest mandates of the legal profession, and he should, therefore, take solace in the knowledge that he has contributed to the continuation of equal educational opportunities in Pasadena.

Except as to attorney fees, the petitioner's motion is hereby granted.

