Nancy Anne SPANGLER, by her father and next friend, James E. Spangler, Jr., et al., Plaintiffs-Appellees,

and

United States of America, Plaintiff-Intervenor-Appellee,

v.

PASADENA CITY BOARD OF EDUCATION et al., Defendants-Appellants.

Nos. 74-2530, 75-1714.

United States Court of Appeals, Ninth Circuit.

May 25, 1976.

Lee G. Paul (argued), of Paul, Hastings, Janofsky & Walker, Los Angeles, Cal., Charles B. Johnson, Pasadena, Cal., for defendants-appellants.

Fred Okrand (argued), of ACLU Foundation of Southern Cal., Los Angeles, Cal., for plaintiffs-appellees.

Neal J. Tonken (argued), Atty., U. S. Dept. of Justice, Washington, D. C., for intervenor-appellee.

OPINION

Before CHAMBERS and WALLACE, Circuit Judges, and JAMESON, District Judge.

CHAMBERS, Circuit Judge.

This is another chapter in Pasadena, California, school desegregation ordered by the District Court, *Spangler v. Pasadena City Board of Education*, 519 F.2d 430 (9th Cir. 1975), certiorari, 423 U.S. 945, 96 S.Ct. 355, 46 L.Ed.2d 276, 44 U.S.L.W. 3271 (1976) granted. The reported case gives the background.

Part of the original plan provided rules for selecting school administrators to give representation to minorities.

On a motion to adjudge the school board in civil contempt for not complying with the Court's decree on hiring administrators the board contended it had only appointed "acting" administrators. "Acting" people did not have the special racial qualifications of the original decree.

After the Court ruled "acting" administrators had to qualify under the plan, the board accepted the ruling, but it still objects to the contempt holding.

■ We hold that the civil contempt is now moot. (The daily fine was stayed pending appeal.) There seems so little likelihood that the problem will reoccur that we hold there is no controversy, which of course is the threshold of any federal jurisdiction. Thus we do not get to subject matter jurisdiction.

The contempt proceeding was brought by a father not a party to the original proceeding. As a part of its holding of contempt, the District Court fashioned a "review board" to oversee future hiring of administrators. This would only serve to perpetuate control of the schools by the Court and take the power out of the school board where it belongs. Maybe it might well have been put in the original decree, limited as to time.

■ We find it error to create the review board without advance notice to the school board that such was under contemplation. If the board of review has been created, it is time for it to go home.

■ Case 75–1714 involves attorney's fees denied Charles Johnson, a lawyer who appeared for himself. The denial is affirmed. If the fees were allowable, there was no abuse of discretion. And fees might not be allowable at all under *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

REMANDED FOR PROCEEDINGS CONSISTENT HEREWITH.

WALLACE, Circuit Judge (dissenting):

I respectfully dissent. I conclude that the district court was without jurisdiction. Johnson, a taxpayer and a father of two black students in Pasadena, was the sole moving party. However interested he may be, as a taxpayer and a father, in the enforcement of the district court's desegregation order, he lacks the requisite standing for prosecuting the contempt action.

The district court found Pasadena to be in civil contempt. *Spangler v. Pasadena City Board of Education*, 384 F.Supp. 846, 851 (C.D.Cal.1974) (*Spangler II*). Only the real parties in interest may institute a civil contempt action; a district court is without authority to do so sua sponte. *MacNeil v. United States*, 236 F.2d 149, 153–55 (1st Cir.), *cert. denied*, 352 U.S. 912, 77 S.Ct. 150, 1 L.Ed.2d 119 (1956); *see Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444–45, 451, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Therefore, the first question is whether Johnson had standing to bring the contempt proceeding.

Spangler and the government argue that Johnson had standing pursuant to Rule 71, Fed.R.Civ.P., which states:

When an order is made in favor of a person who is not a party to the action, he may enforce obedience to the order by the same process as if he were a party

. . . . .

I find no indication whatsoever that the district court's original order was made in favor of Johnson, as an individual, or more generally in favor of parents of schoolchildren. *Spangler v. Pasadena City Board of Education*, 311 F.Supp. 501, 505, 521 (C.D. Cal.1970) (*Spangler I*). *See United States v. American Society of Composers, Authors and Publishers*, 341 F.2d 1003, 1008 (2d Cir.), *appeal dismissed*, 382 U.S. 38, 86 S.Ct. 160, 15 L.Ed.2d 32, *cert. denied*, 382 U.S. 877, 86 S.Ct. 160, 15 L.Ed.2d 119 (1965) (indirect benefit insufficient). The desegregation order was made in favor of students in the school district. Parental interest in the well-being of their children, which may be sufficient for purposes of intervention as of right pursuant to Rule 24(a)(2), Fed.R.

Civ.P.,[1] is not the touchstone for determining standing to enforce a decree under Rule 71. There is no indication in the history of Rule 71 that it was designed for other than the "common sense" purpose of allowing identifiable individuals to enforce rights that have been specifically adjudged by a court order. 12 C. Wright & A. Miller, Federal Practice and Procedure § 3031, at 80 (1973). Here, there is no right for parents such as Johnson to enforce the decree entered for and on behalf of the children.

Aside from failing to meet Rule 71 requirements, I am even more troubled by the district court's implicit recognition that Johnson has met the threshold requirements of standing to sue. *Spangler II, supra,* 384 F.Supp. at 848–49. Johnson clearly lacks standing to sue as a taxpayer. *Flast v. Cohen,* 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Thus, he has no standing unless he has sustained an "injury in fact," and his interest is "arguably within the zone of interests to be protected or regulated by the . . . constitutional guarantee in question." *Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). I conclude that he fails this test also.

Even if I assume that Johnson is injured in fact, he is not within the zone of interests protected by the equal protection clause of the Fourteenth Amendment. In holding that the equal protection clause is violated by racially segregated educational facilities, *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (*Brown I*), is couched solely in terms of the deprivations suffered by black children. The Court limited the issue in *Brown I* to whether "the children of the minority group" were harmed by public school segregation, 347 U.S. at 493, 74 S.Ct. at 691; the interests of neither parents nor the public were discussed. *Cf. Milliken v. Bradley,* 418 U.S. 717, 722 & n.2, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974) (noting that standing of the NAACP was not a contested issue before the Court). In fact, *Brown I* and other major pronouncements on school segregation all involved plaintiffs who were schoolchildren.[2]

---

1. *Johnson v. San Francisco Unified School Dist.,* 500 F.2d 349, 352–53 (9th Cir. 1974); *Smuck v. Hobson,* 132 U.S.App.D.C. 372, 408 F.2d 175, 178–80 (1969); *Atkins v. State Bd. of Educ.,* 418 F.2d 874, 876 (4th Cir. 1969); *see Spangler v. Pasadena City Bd. of Educ.,* 427 F.2d 1352, 1353 (9th Cir. 1970), *cert. denied,* 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971); *Hines v. Rapides Parish School Bd.,* 479 F.2d 762, 765 (5th Cir. 1973); *Hatton v. County Bd. of Educ.,* 422 F.2d 457, 460–61 (6th Cir. 1970). *See also Oliver v. School Dist.,* 448 F.2d 635, 636 (6th Cir. 1971) (The National Education Association and the League of Women Voters of Michigan permitted to intervene); *but see Horton v. Lawrence County Bd. of Educ.,* 425 F.2d 735, 736 (5th Cir. 1970) (NEA had no interest).

These cases are not necessarily inconsistent with my position that a parent does not have standing as the sole litigating party to initiate a desegregation action. The Article III "case or controversy" limitation on federal judicial power mandates that a plaintiff have standing to initiate a suit. But once a case or controversy is before the court, the same constitutional limitation on judicial power does not necessarily require that a prospective intervenor have standing to sue. Thus it appears that Rule 24(a)(2) requires a lesser interest. *United States v. Board of School Comm'rs,* 466 F.2d 573, 577 (7th Cir. 1972), *cert. denied sub nom. Citizens for Quality Schools, Inc. v. United States,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973); Shapiro, *Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv.L.Rev. 721, 726–28 (1968); *cf. Rios v. Steamfitters Local 638,* 520 F.2d 352, 357 (2d Cir. 1975).

Nor are these cases necessarily inconsistent with my position that a parent does not have standing under Rule 71 to bring a civil contempt action to enforce a desegregation decree. An interest sufficient for intervention is not always sufficient for standing to appeal. *Boston Tow Boat Co. v. United States,* 321 U.S. 632, 64 S.Ct. 776, 88 L.Ed. 975 (1944); Shapiro, *supra,* 81 Harv.L.Rev. at 752–54. Similarly, Rule 71 requires a greater interest. Where, as here, someone seeks to initiate what is essentially a new proceeding to enforce a court order, an interest analogous to standing to sue is required.

2. *Brown I, supra,* 347 U.S. at 487, 74 S.Ct. 686; *Milliken v. Bradley, supra,* 418 U.S. at 722, 91 S.Ct. 3112; *Wright v. Council of City of Emporia,* 407 U.S. 451, 455, 92 S.Ct. 2196, 33 L.Ed.2d 51 (1972); *Monroe v. Board of Comm'rs,* 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968), *vacating in part* 380 F.2d 955, 957 (6th Cir. 1967); *Raney v. Board of Educ.,* 391 U.S. 443,

I do not read *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), to imply that a parental right is at stake in school segregation cases. In *Pierce,* the Court struck down a statute which compelled attendance at public schools only, on the grounds that it "unreasonably interferes with the liberty of parents and guardians to direct the upbringing and education of children under their control." 268 U.S. at 534–35, 45 S.Ct. at 573 (citing *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)); *see Roe v. Wade,* 410 U.S. 113, 152–53, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (describing *Pierce* and *Meyer* as cases implicating a right of personal privacy).

There is a fundamental distinction, however, between rights which serve to preserve parental authority and privacy, on the one hand, and rights which limit the exercise of that authority to protect the child's present welfare and to provide for his or her development into a competent adult, on the other. *Wisconsin v. Yoder,* 406 U.S. 205, 229–34, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Prince v. Massachusetts,* 321 U.S. 158, 165–70, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *see* J. Locke, Two Treatises of Government bk. I, chs. II, VI, & bk. II, ch. VI (P. Laslett rev. ed. 1960). I do not find school desegregation to be designed to preserve parental authority or to further parental privacy. Indeed, it has been the exercise of white parental "privacy" that has led to the evil of de jure school segregation. I conclude that the zone of interests to be protected pertain more properly to schoolchildren than to parents. *Accord, Allen v. State Board of Education,* 55 F.R.D. 350, 352 (M.D.N.C.1972), *aff'd mem.,* 473 F.2d 906 (4th Cir. 1973); *see Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Ybarra v. City of San Jose,* 503 F.2d 1041, 1044 (9th Cir. 1974) ("causal relationship between [school segregation] and the alleged discriminatory administration of the zoning ordinances is not so attenuated as to deny standing to at least the minor appellants.").[3] Thus, even assuming that Johnson is injured in fact for Article III case or controversy purposes, he does not meet the second prong of the *Data Processing* test. *See Warth v. Seldin,* 422 U.S. 490, 498–99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *United States v. Richardson,* 418 U.S. 166, 196 n.18, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring).

Nor do I find any reason for relaxing the prudential limitations on those attempting to assert the rights of third parties. This is not a case where a litigant has standing to assert the rights of others because a relationship existing between the litigant and the person whose rights are allegedly violated is adversely affected. *Pierce v. Society of Sisters, supra,* 268 U.S. at 534–36, 45 S.Ct. 571; *see NAACP v. Alabama,* 357 U.S. 449, 458–60, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). There is no dearth of available plaintiffs who could have initiated this contempt proceeding. *See Warth v. Seldin,*

446, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968); *Green v. County School Bd.,* 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), *vacating in part* 382 F.2d 338 (4th Cir. 1967); *Rogers v. Paul,* 382 U.S. 198, 199, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965); *Bradley v. School Bd.,* 382 U.S. 103, 104, 86 S.Ct. 224, 15 L.Ed.2d 187 (1965); *Griffin v. County School Bd.,* 377 U.S. 218, 220, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964); *Goss v. Board of Educ.,* 373 U.S. 683, 684, 83 S.Ct. 1405, 10 L.Ed.2d 632 (1963); *Cooper v. Aaron,* 358 U.S. 1, 13, 78 S.Ct. 1401, 3 L.Ed.2d 5, *aff'g* 257 F.2d 33 (8th Cir., 1958).

*Keyes v. School Dist. No. 1,* 413 U.S. 189, 191, 93 S.Ct. 2686, 37 L.Ed.2d 548 (1973), where the Court described the suit as being brought by parents of schoolchildren, is not to the contrary. The district court described the action as instituted by students and their parents. 313 F.Supp. 90, 91 (D.Colo.1970). The Court was probably referring to the fact that the parents had represented their children in the litigation as guardians.

**3.** *Cf.* 13 C. Wright & A. Miller, Federal Practice and Procedure § 3531, at 194 n.64 (1975) (criticizing standing cases that "focus on injury to the parents, rather than the parents' assertion of injury to the students"); *Adler v. Board of Educ.,* 342 U.S. 485, 502–03, 72 S.Ct. 380, 389–390, 96 L.Ed. 517 (1952) (Frankfurter, J., dissenting) (parents have no standing to challenge restrictions on teachers).

*supra*, 422 U.S. at 510, 95 S.Ct. 2197. Spangler, represented by the American Civil Liberties Union, and the United States (intervenor pursuant to 42 U.S.C. § 2000h–2), were in fact present during the proceeding but declined to join in the motion.[4] Furthermore, there is no indication whatsoever that Johnson's children, or any other schoolchildren, could not have brought this motion by means of a guardian. *See Warth v. Seldin, supra*, 422 U.S. at 510, 95 S.Ct. 2197. Johnson himself might easily have initiated this suit as a general guardian or guardian ad litem by and for his children.[5]

I consider this to be a crucial issue and not a mere matter of form over substance.[6]

We must be mindful of the burden on the federal judiciary that would be exacerbated by allowing disgruntled parents and citizens to litigate their grievances against school officials at whim. *See Goss v. Lopez, supra*, 419 U.S. at 594–99, 600 n.22, 95 S.Ct. 729 (Powell, J., dissenting). That this is no idle threat has already been demonstrated in this controversy when parents dissatisfied with the school board's decision not to appeal the district court's desegregation decree were denied leave to intervene as of right. *Spangler v. Pasadena City Board of Education*, 427 F.2d 1352 (9th Cir. 1970), *cert. denied*, 402 U.S. 943, 91 S.Ct. 1607, 29 L.Ed.2d 111 (1971).[7]

**4.** The district court "noted" "for the record" that Spangler had joined the motion, so that even if Johnson lacked standing the court could nonetheless consider the motion. 384 F.Supp. at 849 n.3. This was not a timely substitution of a real party in interest for *Johnson*. Rule 17(a), Fed.R.Civ.P., provides:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if *the action had been commenced in the name* of the real party in interest.

This sentence is not applicable, however, when there is no difficulty in determining the right party to bring an action and when there has been no excusable mistake made in selecting the party. 6 Wright & Miller, *supra*, § 1555, at 705–08. A court may join a party on its own initiative but there must be an order. *Keenan v. Warren*, 328 F.Supp. 525, 528 (W.D.Wis. 1971), *aff'd*, 404 U.S. 1055, 92 S.Ct. 735, 30 L.Ed.2d 743 (1972); 7 Wright & Miller, *supra*, § 1687, at 337–38. There was no such order here. The district court's "noting" of the joinder cannot be considered a nunc pro tunc order, since the court never informally indicated a joinder to which subsequent reference could be made. On the contrary, the district judge stated during the hearing that Spangler was not a party to the proceeding. Nor was there a ratification by Spangler, assuming that the ratification procedure extends to actions outside the maritime field (*see* 6 Wright & Miller, *supra*, § 1555, at 709), since Spangler did not authorize the continuation of the motion or agree to be bound by its result. *Urrutia Aviation Enterprises, Inc. v. B. B. Burson & Associates, Inc.*, 406 F.2d 769, 770 (5th Cir. 1969). Lastly, the purported joinder was not made within a reasonable time: Spangler sat silent during the entire hearing while Pasadena repeatedly challenged the status of Johnson as a real party in interest.

**5.** The district court stated that Johnson acted "in essence, as a guardian ad litem." 384 F.Supp. at 848. However, Johnson was not formally appointed guardian ad litem. *See Fong Sik Leung v. Dulles*, 226 F.2d 74, 82 (9th Cir. 1955) (concurrence constituting a majority). Even if the ambiguous statements of the court indicating a future intent to appoint Johnson would satisfy the formalities required for binding the children, the children would be the real parties in interest in whose name the action must have been prosecuted. Fed.R. Civ.P. 17(a); 6 Wright & Miller, *supra*, § 1548, at 671–73. Furthermore, were Johnson to argue that he was a general guardian and thus the real party in interest (*but cf. Dana J. v. Superior Court*, 4 Cal.3d 836, 94 Cal.Rptr. 619, 484 P.2d 595 (1971)), there is simply no allegation that he is the general guardian of his teen-aged children or that he is suing on their behalf. *See* Fed.R.Civ.P. 17(c).

**6.** Nor is the result of this argument met by an automatic amendment in the caption of the complaint. There are occasions when parents should not be allowed to sue on behalf of their children, such as when the minors are emancipated or when there is inadequate representation by, or a conflict of interest with, the parent. 6 Wright & Miller, *supra*, § 1570, at 774. It may well be that the district court could conclude that the minor could represent himself. *See Baird v. Bellotti*, 393 F.Supp. 847, 850 & n.5, 851 (D.Mass.1975), vacated on other grounds, —— U.S. ——, 96 S.Ct. 2857, 49 L.Ed.2d —— (1976).

**7.** *See, e. g., Horton v. Lawrence County Bd. of Educ.*, 425 F.2d 735, 736 (5th Cir. 1970) (teach-

Thus, having concluded that Johnson had no power to initiate this controversy, I find the district court was without jurisdiction to hold defendants in contempt or to modify the decree. While there is dicta which taken out of context might support the proposition that sua sponte modifications of decrees are within broad equity jurisdiction, *System Federation No. 91 v. Wright,* 364 U.S. 642, 650–53, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), the rule appears to be that such modification should come only upon motion of the parties. *See* 7 J. Moore, Federal Practice ¶ 60.28[1], at 387–88 (2d ed. 1975); 11 Wright & Miller, *supra,* § 2961, at 611. I would assume that the district court would be modifying the injunction pursuant to Rule 60(b), Fed.R.Civ.P. That rule begins: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding  .  .  .." Following this course would bring the question of modification properly before the court. Thus the concern of the majority as to failure to give notice is, in my judgment, better analyzed in terms of the jurisdictional requirement of a party with standing petitioning for the desired order and providing a copy of the petition, as required, to all other parties.[8]

ers' association denied intervention; white parents and other "groups concerned" had been denied by district court).

[8]  I must agree, however, that even if the district court had power to modify the injunction sua sponte, it could not do so without providing adequate prior notice.