Tallulah **MORGAN** et al., **Plaintiffs-Appellees,**

v.

John J. **KERRIGAN** et al., **Defendants-Appellants.**

No. 75–1001.

United States Court of Appeals, First Circuit.

Jan. 7, 1975.

Francis J. DiMento, Boston, Mass., with whom James J. Sullivan, Jr., and DiMento & Sullivan, Boston, Mass., were on application for stay, for defendants-appellants.

John Leubsdorf, Boston, Mass., for plaintiffs-appellees.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

PER CURIAM.

■ Defendants, three members of the Boston School Committee, seek to stay the sanctions imposed by a civil contempt order of the district court pending disposition of their appeal from that order. Our inquiries must be directed to the likelihood of defendants' ultimate success and a balancing of harm in the interim to them with the harm suffered by plaintiffs and the public if the stay were granted.

The critical order was issued by the district court on October 31, 1974. It required the School Committee to file a plan for student desegregation by December 16, 1974. Broad guidelines as to objectives, techniques, and implementation schedules were set forth. Defendants were instructed to use the most reliable available data, with allowance for later revisions. The resulting plan was to be approved by the Committee before submission to the court. It was to be distributed to other interested persons and community groups, which should then have the right to submit alternative plans and proposals to all or part of the Committee's plan.

No objection was made to or appeal taken from this order. On the deadline date for reception of the plan, defendants voted against its submission. Hearing was had on plaintiffs' subsequent motion for civil contempt on December 27. The court found that defendants were in contempt and on December 30 issued an order of contempt and imposed sanctions—a coercive daily fine yet to be imposed; non-participation in any Committee discussion, decision or function pertaining to desegregation; and institution of an inquiry into the possibility of suspension of two of the defendants from practice as lawyers before the court. This being a judgment of civil contempt, the defendants may at any time avoid further sanctions by the simple expedient of complying with the order. The court recognized that defend-

ants construed the requirement of "approval" as offending their personal convictions and conditioned the sanctions on failure to vote to "authorize" the prompt submission of a plan.

Defendants do not challenge the power or even the wisdom of the court in ordering that the resources of the Boston School Department be used in formulating a plan. But they challenge the power of the court to require that the Committee be identified with any plan. They point to the facts that counsel for the Committee filed a plan with the court, that this action was not disavowed by the Committee, and that copies of the plan were printed for distribution, and assert that there has been a "ratification by silence".

■ The first hurdle confronting defendants is "The longstanding rule that a contempt proceeding does not open to reconsideration the legal or factual basis of the order alleged to have been disobeyed . . . . [W]hen it has become final, disobedience cannot be justified by re-trying the issues as to whether the order should have issued in the first place." Maggio v. Zeitz, 333 U.S. 56, 69, 68 S.Ct. 401, 408, 92 L.Ed. 476 (1948). Nothing has been presented to us which would suggest that the court's order of October 31 is now open to challenge.

■ There is a second obstacle to defendants' ultimate success. They misconceive the thought of the court's directive, particularly as it was rephrased in its order of December 30. If, for reasons of conscience, they felt they could not "approve" any citywide desegregation plan, the court has made it clear that what it requires is a plan "authorized" by the Committee to be submitted to it. This does not connote approval but a representation, made under the court-imposed limitations and restraints of the order of October 31, that a plan as developed by school department staff and reviewed by School Committee members is their best effort to respond to the objectives and guidelines of the court. While this implies no more of an act of personal endorsement than a "ratification by silence", it does signify that intelligence and judgment as to ways and means have been applied.

We find the act of submitting an authorized plan under these circumstances likely to prove indistinguishable from the carrying out of any other lawful orders of the court—which defendants have declared their intention of doing. In school desegregation cases, courts have frequently required school boards to submit plans which can serve as a useful focus for analysis, criticism, and improvement. See, e. g., Brown v. Board of Education [Brown II], 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955); Green v. County School Board of New Kent County, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968); United States v. Board of School Commissioners of the City of Indianapolis, 503 F.2d 68 (7th Cir. 1974); Adams v. Mathews, 403 F.2d 181 (5th Cir. 1968); Vaughns v. Board of Education of Prince George's County, 355 F.Supp. 1034 (D.Md.1972). Indeed, this is but a manifestation of the principle that "School authorities have the primary responsibility for elucidating, assessing, and solving [desegregation] problems". Brown II, 349 U.S. at 299, 75 S.Ct. at 756.

Requiring a plan from the School Committee would seem as sensible and necessary as involving any governmental agency in drafting proposals for regulations mandated by a court. Indeed, to isolate a city's elected school officials from the desegregation planning process would seem an exercise in needless frustration.

■ We therefore are not persuaded of the likelihood that defendants will ultimately succeed in their challenge to the order they are presently defying. And while defendants face the prospect of coercive fines and other sanctions if they continue to refuse to submit any plan, the step necessary to purge them of contempt places no unreasonable burden on them. In contrast, the delay and disruption in the planning process and the continued deprivation of otherwise available

federal education funds seem a disproportionate price to pay.

The motion for stay pending appeal is denied.