In re Hugh S. HUNT, Appellant.

Hugh S. HUNT, Plaintiff-Appellant,

v.

Ray Lee HUNT, Individually and as Executor of the Estate of H.L. Hunt, and George Cunyus, Individually and as Attorney for the Estate, Defendants-Appellees.

No. 83–4728

Summary Calendar.

Nos. 84–4313, 84–4487.

United States Court of Appeals, Fifth Circuit.

March 15, 1985.

Rehearing Denied May 10, 1985.

Hugh S. Hunt, pro se.

Philip J. Hirschkop, Alexandria, Va., for other interested parties.

Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lawrence L. Lewis, III, Lafayette, La., Cook, Yancey, King & Galloway, Sidney E. Cook, F. Drake Lee, Jr., Shreveport, La., for defendants-appellees.

T. Haller Jackson, Shreveport, La., for amicus curiae Frania Tye Lee.

Before GEE, JOHNSON, and DAVIS, Circuit Judges.

GEE, Circuit Judge:

Hugh S. Hunt appeals from a district court order holding him in civil contempt for violating the terms of a permanent injunction and a ruling dismissing a complaint filed by him against Ray Lee Hunt (the "Executor"), executor of the estate of H.L. Hunt (the "Estate"), and George Cunyus. The district court imposed sanctions on Hunt for his violation of the injunction and ordered him to pay attorneys' fees to the Estate and to Cunyus. We hold that the district court's rulings were correct and affirm its judgment against Hunt.

## I.

This is the latest in a series of actions brought by Hunt challenging the Master Settlement Agreement, which settled all claims of Hunt's mother, Frania Tye Lee, and her descendants against the Estate. As the district court in the instant case noted, the history of this litigation has been "long and convoluted, both in facts and in circumstances. There have been almost continual hearings and trials and motions and appeals and interventions, most of [them] ... at the behest of Hugh...." See Lee v. Hunt, 410 F.Supp. 329 (M.D.La. 1976); Lee v. Hunt, 415 F.Supp. 245 (W.D. La.1976); Lee v. Hunt, 431 F.Supp. 371 (W.D.La.1977); Lee v. Hunt, 483 F.Supp. 826 (W.D.La.1979), aff'd 631 F.2d 1171 (5th Cir.1980), cert. denied, 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981).

In 1975 Frania Tye Lee began this litigation by bringing suit against the Estate in the United States District Court for the Middle District of Louisiana. Mrs. Lee asked the court to recognize her as the putative spouse of the late H.L. Hunt and to award her an undivided half interest in all community property acquired during the alleged putative relationship. The case was transferred to the Western District of Louisiana, where it proceeded to trial. Before the trial was completed, however, Mrs. Lee, the Estate, and others interested in the litigation reached a compromise and settlement for the stated purpose of "bring[ing] this entire litigation to a conclusion and in addition to this litigation any other claim of any nature or kind which any member of the Hunt family may have one against the other of any nature or kind...." Lee v. Hunt, 631 F.2d 1171, 1176 (5th Cir.1980). Hugh Hunt signed this agreement.

The parties later drafted a "Master Settlement Agreement" to implement the

terms of the agreement reached during the trial. Hunt refused to sign the Master Settlement Agreement, apparently attempting to avoid the terms of the earlier settlement agreement into which he had entered. After a hearing, the district court held that the Master Settlement Agreement fairly reflected the terms of the original settlement and ordered Hunt to execute the Master Settlement Agreement. He did so, thereby recognizing the validity of H.L. Hunt's Last Will and Testament and Codicil as filed in the probate court of Dallas County, Texas, and releasing all rights he might have had based on the alleged relationship between Mrs. Lee and H.L. Hunt. The district court incorporated the Master Settlement Agreement provisions into its final judgment, 483 F.Supp. 826 (W.D.La. 1979), and we affirmed the district court's decision. 631 F.2d 1171 (5th Cir.1980).

Despite the settlement and disposition of his claims in federal court, Hunt filed a petition in the continuing succession proceeding in Louisiana state courts in an attempt to relitigate his rights against the Estate. The Estate removed this action to federal court and asked the court to issue an injunction preventing Hunt from prosecuting any action in violation of the Master Settlement Agreement. After a hearing, the court issued this injunction.[1] Hunt did not appeal the decision.

After the district court had issued the injunction against Hunt, the probate proceedings in state court continued. In 1983 the Executor filed a final account of the Estate and a final tableau of distribution with the probate court. Notice of this filing was provided to Hunt in accordance with a request for verification he had made. Neither Hunt nor any other party objected to the final account or the tableau of distribution, and the state court entered a Judgment Homologating Final Tableau of Distribution authorizing the Executor to pay the debts of the Estate and to distribute the assets in accordance with the tableau.

Hunt then retained a new attorney and did not advise the attorney of the injunction forbidding him from further litigating any claims against the Estate. Hunt's new attorney filed a motion for a new trial in the Louisiana succession proceeding. Attorneys for the Estate informed Hunt's attorney of the injunction and told him that they would institute civil contempt proceedings against Hunt if the motion for a new trial was not withdrawn. Hunt did not withdraw the motion, and the Estate filed its motion for contempt in federal court. Before the district court hearing on the Estate's contempt motion, the state court denied Hunt's motion for a new trial. Hunt then filed another motion in state court entitled "Petition for Nullity" seeking a ruling nullifying the court's Judgment Homologating Final Tableau of Distribution.

The district court held the contempt hearing in October 1983, found Hunt in contempt, and fined him $1000 per day until he purged himself of the contempt by dismissing his actions in federal and state court. The court gave Hunt a five-day grace period in which to comply with its order, but ordered the fine to be increased to $10,000 per day if Hunt did not comply with the court's order within 30 days. Finally, the court ordered Hunt to pay $687.50 to the Estate as reasonable attorneys' fees pursuant to 28 U.S.C. § 1927.

Hunt dismissed his action in state and federal court within the five-day grace period, thereby avoiding the $1000 per day fine. He also paid the Estate the court-ordered attorneys' fees. Hunt then filed an-

---

1. The injunction provides in pertinent part:

    IT IS ORDERED that Hugh S. Hunt and Ronald A. Cartledge [a grandson of Mrs. Lee], and each of them, as well as any other person, firm or corporation acting or claiming to act on their behalf, be and they hereby are restrained, enjoined and prohibited from (a) further prosecuting or proceeding on cause Number 79–1733 in the U.S. District Court for the Western District of Louisiana, Lafayette Division; or (b) commencing or prosecuting any action in any federal or state court based upon or arising out of any alleged putative relationship between Frania Tye Lee and the late H.L. Hunt.

other action in federal court against the Estate, the Executor, and George Cunyus, charging the Estate with violations of the Master Settlement Agreement and Cunyus with conspiring with the Estate to accomplish the violations. Pursuant to motions by the defendants, the district court dismissed this complaint for failure to state a claim upon which relief could be granted.

After the district court's ruling, Hunt appealed to this Court, arguing that the district court improperly dismissed his complaint. Hunt also contends that the injunction, although properly issued and binding against him, does not prevent him from challenging the administration of the Estate under the Master Settlement Agreement in Louisiana state court. Finally, Mrs. Lee, as amicus curiae, contends that the injunction against Hunt is invalid and unenforceable and that the district court erred in ordering Hunt to pay attorneys' fees and court costs under 28 U.S.C. § 1927.

## II.

We first consider Mrs. Lee's contention that the district court erred in issuing the injunction against Hunt, and that therefore the injunction cannot support a contempt judgment against him. Specifically, Mrs. Lee contends that the district court failed to follow rule 65(d) of the Federal Rules of Civil Procedure[2] in issuing the injunction and that the injunction is unenforceable because of its "ambiguity." Mrs. Lee also contends that the Estate failed to show by clear and convincing evidence that Hunt's actions were contemptuous and that he acted in good faith in bringing the state and federal court actions. The Estate contends that the issue of the propriety of the contempt judgment against Hunt is moot because he has purged himself of the con-

tempt and that, in any event, the district court correctly held him in contempt.

We agree with the Estate that the issue of the propriety of the contempt judgment against Hunt is moot. Generally, the discharge of a civil contempt order by the person held in contempt moots any appeal of the contempt judgment. *See Thyssen, Inc. v. S/S Chuen On*, 693 F.2d 1171, 1173 n. 3 (5th Cir.1982). Mrs. Lee recognizes this rule, but argues that the contempt judgment against Hunt was criminal rather than civil in nature. The test for determining the civil or criminal nature of a contempt order is the apparent purpose of the trial court in issuing the contempt judgment. If the court's purpose is punitive, or if the injunction is "designed to vindicate the authority of the court," the contempt judgment is considered criminal. If, however, the court's purpose in issuing the injunction is coercive or remedial, the contempt is civil in nature. *Id.* at 1173–74; *Smith v. Sullivan*, 611 F.2d 1050, 1053 (5th Cir.1980).

In this case, the district court's contempt order was remedial, designed to coerce Hunt into complying with the permanent injunction and the Master Settlement Agreement. The contempt proceeding was civil in nature, initiated by an adverse party and not by the court. *See* C. Wright & A. Miller, *Federal Practice and Procedure*, Civil § 2960 (1973). That the court imposed a fine on Hunt for his failure to comply with the injunction does not change the civil nature of the contempt judgment; the court's grant of a five-day grace period to Hunt indicates that the court's purpose in imposing the fine was not to punish Hunt for past misconduct, but rather to coerce him into complying with the court's injunction. Because of the civil nature of the contempt judgment and Hunt's compliance with that judgment, the

---

**2.** Rule 65(d) provides:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is

binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

issue of the propriety of the contempt judgment against Hunt is moot.

## III.

We next consider whether the injunction prevents Hunt from acting in the Louisiana state courts to protect rights he contends are preserved by the Master Settlement Agreement. The district court's injunction is designed to enforce the terms of the Master Settlement Agreement by preventing Hunt from filing lawsuits regarding rights he has already relinquished. The Master Settlement Agreement indicates that Hunt, along with other persons, agreed to recognize the validity of the will of H.L. Hunt that was admitted to probate in Dallas County, Texas. The Agreement also indicates that Hunt, in exchange for a proportionate share of $7,500,000 and other consideration, agreed to give up any rights he may have had under H.L. Hunt's will or as a putative heir of H.L. Hunt.

Thus, under the Master Settlement Agreement, Hunt no longer has any rights in the Estate or any interest in the administration of the Estate. Even if the district court had not issued the injunction, Hunt could not assert his claims in state court because he has relinquished all of the alleged rights he seeks to protect. The injunction simply serves to coerce Hunt into obeying the terms of the Master Settlement Agreement, and together the injunction and the Agreement bar Hunt's federal and state court actions.

## IV.

Finally, Mrs. Lee claims that the district court erred in awarding the Estate costs and attorneys' fees against Hunt under 28 U.S.C. § 1927.[3] The granting and computation of costs and fees are committed to the sound discretion of the district court, and we will reverse such awards only if the district court abuses its discre-

---

**3.** Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and

tion. *Thomas v. Sams,* 734 F.2d 185, 193–94 (5th Cir.1984); *Warren v. Reserve Fund, Inc.,* 728 F.2d 741, 748 (5th Cir. 1984). In this case, we may not review the award at all because the issue is not properly before us. Mrs. Lee's role as amicus curiae is limited to advising this Court on issues of law; she may not raise an issue of fact in this appeal. *See generally New England Patriots Football Club, Inc. v. University of Colorado,* 592 F.2d 1196 (1st Cir.1979). Because Hunt has not raised the costs and fees issue in his briefs, the issue is not properly before us and we express no opinion on the merits of Mrs. Lee's contention. For the foregoing reasons, the judgment of the district court is

AFFIRMED.

vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.