**Sharon RAMBO**

v.

**MOREHOUSE PARISH SCHOOL BOARD, et al.**

No. CIV.A. 98–1203.

United States District Court, W.D. Louisiana, Alexandria Division.

Jan. 19, 1999.

Pamela R. Jones, Tracy A. Burch, Jennifer B. Drago, Jones Mitchell & Burch, Shreveport, LA, for Sharon Rambo, plaintiff.

Pamela G. Nathan, Blanchard Walker et al, Shreveport, LA, Robert P. McLeod, Laurie J. Burkett, McLeod Verlander et al, Monroe, LA, for School Board Morehouse Parish, Michael Faulk, Charles Sims, Loe Dunn, Doris Jackson, George Estep, Jr., T.A. Rogers, James Bonsall, Frankie Conway, defendants.

## RULING

LITTLE, Chief Judge.

Before this court are cross Motions for Summary Judgment filed by plaintiff Sharon Rambo ("Rambo") and defendants Morehouse Parish School Board ("School Board"), Michael Faulk ("Faulk"), Charles Sims ("Sims"), Loe Dunn ("Dunn"), Doris Jackson ("Jackson"), George Estep, Jr. ("Estep"), T.A. Rogers ("Rogers"), James Bonsali ("Bonsali") and Frankie Conway ("Conway") (collectively "defendants"). Rambo asks this court to find defendants in contempt of its order of 1 May 1975 in the case of *Hayes v. Morehouse Parish School Board*, CV No. 74–951–M ("*Hayes* order"). Defendants ask this court to find as a matter of law that it did not contravene the *Hayes* order. For the reasons stated below, Rambo's motion is GRANTED and defendants' motion is DENIED.

### I.

The parties agree as to the following material facts. Bastrop High School is within the jurisdiction of the *Hayes* order and is controlled by its terms. The *Hayes* order applies to the School Board, the superintendent, and the individual School Board members in their official and individual capacities. It decrees as follows: "defendants immediately implement the following objective non-discriminatory standards for the *selection* of principals ...: An individual to be promoted to principal ... must be selected from *all* profes-

sional employees in the Morehouse Parish School System[.]" *Hayes* order, p. 2 (emphasis added). The *Hayes* order then sets forth a three phase process for the selection of principals (the "*Hayes* proceeding").

Bastrop High School had no principal at the beginning of the 1997–98 school because of the departure of Mr. Van Loon, its prior principal, for another position in the School Board system. Faulk appointed, and the School Board approved, Tom Thrower ("Thrower") to serve as principal of Bastrop High School on a temporary basis for the 1997–98 school year. The School Board initiated the *Hayes* procedure to fill the vacancy for the 1998–99 school year by advertising for applications for the position. A number of candidates, including Rambo, submitted applications.

In the spring of 1998, Thrower requested to serve as principal of Bastrop High School on a permanent basis. Faulk agreed and appointed Thrower to the position. A four year contract was created. Thrower's appointment does not comply with the *Hayes* procedure. The candidates who had submitted applications did not proceed through the mandated selection process.

Rambo argues that the *Hayes* order is binding on the School Board any time it fills a position of principal. Moreover, she claims that Thrower was promoted from supervisor to principal, since the principal position entails higher annual pay and greater responsibility. She maintains that failure to follow the *Hayes* procedure when filling the principal position at Bastrop High School puts the School Board in contempt of the *Hayes* order. The School Board counters that the *Hayes* order only applies when it promotes someone to the position of principal. The School Board insists that Thrower's move from supervisor to principal was a demotion or lateral transfer, since the supervisor's position is "higher on the pecking order" than the principal's position. Moreover, the School Board claims that Thrower is now paid less per hour than he was as a supervisor, and that his responsibility has actually been reduced from managing three schools to merely one. The School Board argues that since it did not promote anyone to the position of principal, the *Hayes* order does not apply. It also maintains that the individual school board members are absolutely or qualifiedly immune from this contempt action.

## II.

### A.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. 2505. Once the moving party has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed.R.Civ.P. 56(e); *Matsushita Elec. Ind. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Conclusionary denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *S.E.C. v. Recile*, 10 F.3d 1093, 1097 (5th Cir.1993).

The court may grant summary judgment as to "all or any part" of a claim. Fed. R.Civ.P. 56(a). The standards and procedures for partial summary adjudication are the same as for summary judgment. *See Campbell v. Sonat Offshore Drilling, Inc.,* 979 F.2d 1115, 1118 (5th Cir.1992).

The parties agree, as does the court, that no material facts are at issue in this case and that this matter is appropriate for summary adjudication.

### B.

"The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Ex parte Robinson,* 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873). This principle has been codified and limited by statute: "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none others, as ... (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401.

"Contempts are neither wholly civil nor altogether criminal." *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911). "It is not the fact of punishment, but rather its character and purpose, that often serve to distinguish between the two classes of cases. If [the contempt action] is for civil contempt the punishment is remedial and for the benefit of the complainant." *Id.; see Hunt v. Hunt,* 754 F.2d 1290, 1293 (5th Cir.1985) ("If ... the court's purpose in issuing the injunction is coercive or remedial, the contempt is civil in nature."); 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 2960, at 367 ("Refusal to do an act commanded is civil contempt.") (citing *De Parcq v. U.S. District Court for So. District of Iowa,* 235 F.2d 692, 699 (8th Cir.1956)). "Proceedings for civil contempt are between the original parties, and are instituted and tried as part of the main cause." *Gompers,* 221 U.S. at 444–45, 31 S.Ct. 492.

"A movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Martin v. Trinity Industries, Inc.,* 959 F.2d 45, 47 (5th Cir.1992). Clear and convincing evidence is "that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *re Medrano,* 956 F.2d 101, 102 (5th Cir.1992) (quoting *Cruzan by Cruzan v. Director, Missouri Dept. of Health,* 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990)).

"Contempt is committed only if a person violates a court order requiring in specific and definite language that a person do or refrain from doing an act." *Martin,* 959 F.2d at 47; *see also Reed v. Cleveland Bd. of Educ.,* 607 F.2d 749, 752 (6th Cir.1979) ("The notice of a judicial order upon violation of which a contempt finding may properly be based is such notice as would clearly tell a reasonable person what he is required to do or abstain from doing."). "The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous." *Baddock v. Villard (In re Baum),* 606 F.2d 592, 593 (5th Cir.1979) (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967)).

A civil contempt order becomes moot by purgation of the contempt, or by discontinuance of the original action. *See Hunt,* 754 F.2d at 1293 ("Generally, the discharge of a civil contempt order by the person held in contempt moots any appeal of the contempt judgment."); *Petroleos Mexica-*

nos v. *Crawford Enterprises, Inc.,* 826 F.2d 392, 400 (5th Cir.1987) ("If the civil contempt proceeding is coercive in nature, the general rule is that it is mooted when the proceeding out of which it arises is terminated.").

■■■ "In general, the lack of malicious intent or the presence of a good faith belief in the rectitude of one's position cannot serve to 'sterilize conduct otherwise contemptuous.'" *Spangler v. Pasadena City Bd. of Educ.,* 384 F.Supp. 846, 849 (C.D.Cal.1974) (Real, J.), *contempt action moot on appeal* 537 F.2d 1031, 1032 (9th Cir.1976) (quoting *Babee–Tenda Corp. v. Scharco Manufacturing Co.,* 156 F.Supp. 582, 587 (S.D.N.Y.1957)). "It should be noted, however, that both the presence of a bona fide belief in the rectitude of one's actions and the reliance upon the advice of counsel may operate to mitigate the severity of the contempt sanction." *Id.* at 850.

■■■ The parties agree that the *Hayes* order was in effect at all relevant times and bound the defendants. The parties do not dispute the fact that the defendants did not conduct a *Hayes* proceeding to reach its choice of Thrower as the permanent principal of Bastrop High School. The principal issue of contention is whether the *Hayes* order required the defendants to hold a *Hayes* proceeding when they selected Thrower as principal of Bastrop High School on a permanent basis. If the *Hayes* order mandates a *Hayes* proceeding any time the defendants fill a principal position on a permanent basis, defendants are in contempt.

We think this question can be answered on the basis of the plain language of the *Hayes* order itself. The order requires that its standards apply for "the selection of principals." *Hayes* order, p. 2. In addition, the order continues that "the individual to be promoted to principal ... must be selected from *all* professional employees in the Morehouse Parish School System[.]" *Id.* (emphasis added). The clear, unambiguous import of the language is that *any* time the board engages in the process of selecting a principal, the job must be open to *all* professional employees in the school system. "All" means "all." "All" professional employees unambiguously contemplates those employees below and above the position of principal on the school system's "pecking order." In other words, the defendants will not know whether they are filling the position of principal through a promotion, demotion, or lateral transfer until they have held a *Hayes* proceeding to determine whom they will select from amongst all the professional employees in the school system who are eligible for the job. Therefore, the *Hayes* proceeding is mandatory any time a job opening for a principal needs to be filled on a permanent basis.

Defendants protest that they interpreted the *Hayes* order differently in that they thought a *Hayes* proceeding was only necessary when an employee would be promoted to principal. Although we do not question the sincerity of the School Board in its assertion, this argument also must fail. First, this interpretation is inconsistent with the plain language of the *Hayes* order: if the School Board decides to demote someone to the position of principal without first holding a *Hayes* proceeding, then the job will not be open to all professional employees in the Morehouse Parish School system. When the School Board realized that its interpretation contravened the plain language of the *Hayes* order, it should have filed a motion for clarification before proceeding with the placement of Thrower in the position of principal of Bastrop High School. *See generally Little Rock School District v. Pulaski County Special School District No. 1,* 839 F.2d 1296, 1312 (8th Cir.1988) ("[T]he LRSD should have gone before the District Court and asked for modification of the agreement before deciding to ignore or violate the order[.]").

Second, the School Board's misinterpretation of the *Hayes* order does not preclude a finding of contempt. *See Morgan*

*v. Kerrigan,* 509 F.2d 618 (1st Cir.1975). In *Morgan,* the defendant School Committee was required to file a desegregation plan. The language of the order demanded that the members of the Committee "approve" a plan to be submitted. When the defendants voted not to submit a plan, the district court held them in contempt, duly noting that "defendants construed the requirement of 'approval' as offending their personal convictions." *Id.* at 619–20. In the contempt order, the district court therefore required defendants to " 'authorize' the prompt submission of a plan." *Id.* at 620.

The defendants appealed, claiming that the district court could not "require that the Committee be identified with any plan" and arguing that the plan they refused to approve had been "ratifi[ed] by silence." *Id.* The First Circuit rejected this argument: "If, for reasons of conscience, they felt they could not 'approve' any citywide desegregation plan, the court has made it clear that what is required is … a representation … that a plan … reviewed by School Committee members is their best effort to respond to the objectives and guidelines of the court." *Id.*

Similarly, the *Hayes* order required the School Board to make personnel decisions using an "objective non-discriminatory standard for the selection of principals[.]" *Hayes* order, p. 2. That is what is important, and that is what was not done.[1] That defendants misconstrued the order does not purge their contempt.

Third and finally, the defendants acted contradictorily to their own interpretation of the *Hayes* order when they placed Thrower in the position of principal. Whether this court looks to Louisiana state statutes or Fifth Circuit decisional

law, there can be no question that Thrower was promoted to the position of principal. When Thrower moved from supervisor to principal, his annual salary increased. Though defendants claim his hourly wage dropped, this argument is not relevant. The record does not disclose whether Thrower has a teacher's certificate, although defendants concede that he was a principal for four years before he became a supervisor. If Thrower has a teacher's certificate, then he is a "teacher" under La. R.S. 17:441. And under La. R.S. 17:444, a promotion of a teacher occurs any time he is transferred from a position of lower salary to one of higher salary. *See also Smith v. Ouachita Parish School Bd.,* 702 So.2d 727 (La.App. 2d Cir.1997) (holding that a teacher was promoted to guidance counselor when the position was desirable and paid a higher salary); *see generally* La. Atty. Gen. Op. No. 90–5, 1990 WL 544827 (La.A.G.) (applying La. R.S. 17:444 to a school principal). Since Thrower was transferred from a position of lower salary to one of higher salary, he was promoted as a matter of law if he has a teaching certificate.

And if Thrower does not have a teacher's certificate, then the definition of "demotion" promulgated in Fifth Circuit decisional law applies. *See Singleton v. Jackson Municipal Separate School District,* 419 F.2d 1211 (5th Cir.1969), *partially vacated on other grounds in Carter v. West Feliciana Parish School Bd.,* 396 U.S. 996, 90 S.Ct. 496, 24 L.Ed.2d 461 (1969), *and partially reversed on other grounds in Carter v. West Feliciana Parish School Bd.,* 396 U.S. 290, 90 S.Ct. 608, 24 L.Ed.2d 477 (1970) [hereinafter *Singleton III* ]. According to *Singleton III,* a demotion occurs any time "the staff mem-

---

1. Indeed, the School Board argues that Thrower's placement as principal "had nothing to do with race or gender. Rather, it had to do with who was the best qualified and capable person for the job." Def.'s Mem. in Sup. of Sum. Jmt., p. 18–19. But this argument is wide of the mark: the *Hayes* order strips the School Board of the authority to

make such a decision *without* using the *Hayes* proceeding. Only by employing the *Hayes* proceeding can the School Board know "who was the best qualified and capable person for the job." With this argument, the defendants concede that they exercised their discretion in violation of the *Hayes* order.

ber receives less pay or has less responsibility than under the assignment he held previously." *Id.* at 1218.[2] Thrower, as we have seen, did not receive less pay; rather, his annual salary increased. Moreover, Thrower faced increased responsibilities in his position as principal. Defendants maintain that as supervisor, Thrower oversaw three schools, and now, as principal, he is only in charge of one school. This, they claim, is a 2–fold decrease in his responsibility. Yet defendants also admit that Thrower must work additional hours as principal, and that he must assume many responsibilities, like attending football games, that he did not have to shoulder as supervisor. We think the better view is that Thrower's responsibilities as supervisor were different than his responsibilities as principal, but that the increased hours indicate a quantum increase in overall responsibilities as principal. Since Thrower received more pay and more responsibility, he was not, as the School Board claims, demoted to the position of principal of Bastrop High School.

Because we find that defendants' actions violated both the plain language of the *Hayes* order and their own interpretation of the mandate, we find that Rambo has established, by clear and convincing evidence, that the School Board is in contempt of court. *See also Spangler,* 384 F.Supp. at 850 ("While . . . the burden of proof necessary to support a claimed civil

contempt citation must be of a 'clear and convincing' nature, the evidence adduced . . . was uncontroverted to the effect that the acts of which the petitioner currently complains actually occurred." (citations omitted)).

### C.

■ Faulk, Sims, Dunn, Jackson, Estep, Jr., Rogers, Bonsall, and Conway (the superintendent and school board members respectively) argue that they are absolutely, or at least, qualifiedly immune from this contempt action. This argument entirely misconstrues the nature of the contempt action. Though stated before, the following principle bears repeating: "Proceedings for civil contempt are between the original parties, and are instituted and tried as part of the main cause." *Gompers,* 221 U.S. at 444–45, 31 S.Ct. 492. If the defendants were not absolutely or qualifiedly immune from the original proceeding, they cannot be absolutely or qualifiedly immune from a contempt action arising from their disobedience of the order issued in the original proceeding. It simply confounds logic to say that defendants are not immune from suit, but are immune from the order enforcing the suit.[3]

### 1.

■ Defendants cite *Mays v. Sudderth,* 97 F.3d 107 (5th Cir.1996), and *Hart v.*

---

2. Defendants argue that *Hereford v. Huntsville Bd. of Educ.,* 574 F.2d 268 (5th Cir.1978) prohibits the application of *Singleton III* to cases "wherein the plaintiffs charge that they have been discriminated against in awarding promotions." Def.'s Mem. in Sup. of Def.'s Mot. for Sum. Jmt. p. 12. Defendants are correct insofar that "*Singleton [III]* applies only to desegregation related reductions resulting in dismissals or demotions." *Hereford,* 574 F.2d at 270. But defendants are arguing that Thrower's appointment as principal is actually a desegregation related demotion. (The alleged demotion is "desegregation related" because the Morehouse Parish School System is under a continuing desegregation order that governs certain personnel decisions). In trying to ascertain, therefore,

whether defendants' characterization is correct, we see nothing improper in applying a definition set forth in this seminal case.

3. This same principle gives rise to the rule that service of process for the purpose of bringing the defendants within the jurisdiction of the district court is not necessary in a contempt action; *see Leman v. Krentler-Arnold Hinge Last Co.,* 284 U.S. 448, 454, 52 S.Ct. 238, 76 L.Ed. 389 (1932) ("As the proceeding for civil contempt for violation of the injunction should be treated as a part of the main cause, it follows that service of process for the purpose of bringing the respondent within the jurisdiction of the [district court] was not necessary.").

*O'Brien,* 127 F.3d 424 (5th Cir.1997) for the principle that "an official acting within the scope of his authority is absolutely immune from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction." *Mays,* 97 F.3d at 112. Defendants concede in a footnote that "[a]l-though the holdings in *Mays* and *Hart* dealt with the execution of arrest warrants pursuant to facially valid court orders, the Fifth Circuit's reasoning is equally applicable to the instant case." Def.'s Mem. in Sup. of Def.'s Mot. for Sum. Jmt., at 19 n. 19. Defendants' argument is wrong.

*Mays* involved a criminal trial in which Sudderth was the defense counsel. Mays was a key defense witness who had failed to respond to two prior subpoenas. The trial court therefore issued an arrest warrant, which the sheriff executed. Mays' cause of action arose out of the execution of the arrest warrant by the sheriff. *See id.* at 108–09. *Mays* is therefore distinguishable in two significant ways. First, the action is not a contempt proceeding. And second, the sheriff was not a party to a suit in which an order had been issued. Had the sheriff been a party to a suit, from which he was not immune, then any conduct he engaged in which flouted the judge's order would have placed him in contempt.

*Hart* is similarly distinguishable. Hart sued officers who had searched her house and discovered marijuana. The charges were later dropped. *See Hart,* 127 F.3d at 432–34. As in *Mays,* the suit was not a contempt proceeding; nor were the officers party to an action in which an order had issued prohibiting them from searching Hart's house.

The individually-named defendants are the successors in interest of the superintendent and individually-named members of the School Board who were sued in the initial action in 1975. The original defendants were not immune from suit then. The present individually-named defendants

have been on notice that Morehouse Parish School System is under a continuing desegregation order. Because they are the parties to the suit for purposes of the continuing injunction, they are not entitled to absolute immunity for actions they take that flout this court's order.

2.

The argument for qualified immunity is similarly flaccid. The individually-named defendants assert: "Under the doctrine of qualified immunity, government officials performing discretionary functions are shielded from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Def.'s Mem. in Sup. of Def.'s Mot. for Sum. Jmt., p. 20 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818–819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

Defendants insist that they could not have known that "demoting" Thrower to the position of principal would violate the order. Therefore, they argue, Rambo's right to participate in a *Hayes* proceeding even when Thrower was going to be "demoted" to that position was not a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727.

■ Defendant's argument, again, misconstrues the nature of a contempt proceeding. As defendants themselves point out, "[q]ualified immunity is available ... in suits arising under §§ 1981 and 1983." Def.'s Mem. in Sup. of Def.'s Mot. for Sum. Jmt, p. 21. This is a contempt action, not a suit arising under either §§ 1981 or 1983. Moreover, even if this were a context in which qualified immunity were applicable, defendants did contravene settled law: the *Hayes* order. *See Jackson v. State of Mississippi,* 644 F.2d 1142, 1145 (5th Cir. Unit A 1981) ("The settled law [plaintiff] invokes is the injunction entered [in a prior civil rights action]."). Finally, if the order was ambiguous or susceptible to

multiple interpretations such that a reasonable person would not know what rights it established, that would be a consideration in finding the defendants in contempt. But that has nothing to do with qualified immunity. As defendants were not immune from the initial suit, they cannot be qualifiedly immune from enforcement of the order.

### 3.

"When a district court's order is necessary to remedy past discrimination, the court has an additional basis for the exercise of broad equitable powers." *Spallone v. United States,* 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990). "But while 'remedial powers' of an equity court must be adequate to the task, . . . they are not unlimited." *Id.* (quoting *Whitcomb v. Chavis,* 403 U.S. 124, 161, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971)). The principle that bounds the district court's broad equitable powers is this: a court must use the contempt sanction that embodies the "least possible power adequate to the end proposed." *Anderson v. Dunn,* 19 U.S. (6 Wheat.) 204, 231, 5 L.Ed. 242 (1821).

In *Spallone,* the Supreme Court held that the district court acted improperly when it imposed fines on individual city council members for civil contempt. The city council members had not been parties to the initial suit, the remedial order from which they had disobeyed. Moreover, the Court held that the district court should first have attempted to obtain compliance with its order by sanctioning the city alone. "Only if that approach failed to produce compliance within a reasonable time should the question of imposing contempt sanctions against petitioners even have been considered." *Spallone,* 493 U.S. at 280, 110 S.Ct. 625; *see also Spangler,* 384 F.Supp. at 850 ("[T]he purpose of a civil contempt proceeding is actually to secure compliance with a lawful court order and not to punish its initial violation.").

Though the individually-named defendants are in fact successors in interest to parties to the original suit, we hold that imposition of fines on them is not necessary to achieve compliance with the *Hayes* order.

### III.

■ We adjudge the defendants in civil contempt of this court. The defendants must put Rambo in the position that she would have been in had they not violated the *Hayes* order: namely, Rambo must have a fair chance at obtaining the position through orderly administration of the three phase *Hayes* proceeding. Toward that end, we hereby order the School Board to conduct a *Hayes* proceeding to determine who, amongst all its professional employees, is most qualified to fill the position of principal at Bastrop High School. We further order the School Board to file a time schedule for compliance with the *Hayes* order. The defendants must file the time schedule no later than 15 working days after their receipt of this order. And defendants must complete the *Hayes* proceeding to select the new principal at Bastrop High School no later than the first day of the 1999–2000 school year.

We order the School Board to pay all reasonable attorneys' fees and costs incurred by Rambo as a result of bringing this action.

We order all defendants to cease and desist any conduct in violation of the *Hayes* order and to comply with its mandate in all future instances when the defendants select principals, assistant principals, counselors, or supervisors.

We decline to grant Rambo's request that we enjoin the defendants from reappointing Thrower to the position of principal of Bastrop High School. Had defendants not violated the *Hayes* order, Thrower, in all likelihood, would have been an applicant with whom Rambo would have to compete for the job. Therefore, eliminating Thrower from the candidate pool does not restore Rambo to the posi-

tion she was in prior to the defendants' violation of the *Hayes* order. If Thrower still wants this job, he may submit to the *Hayes* proceeding when the defendants conduct it this year. We think it too great an infringement on the administration of the school system to order the defendants not to select someone for a job.

This court also declines Rambo's request that we impose procedures to monitor the defendants' compliance with the *Hayes* order. We are not going to issue orders establishing procedures that oversee other procedures that are meant to monitor the defendants' selection of personnel. We think that course ineffective and overly intrusive.

Nevertheless, we are not unaware of the following risk that may be latent in the defendants' compliance with this order: that the defendants will simply go through the motions of conducting a *Hayes* proceeding and reappoint Thrower without fully considering the qualifications of other candidates.[4] We, therefore, strenuously caution the defendants that this court will not accept further violations of the *Hayes* order as a substitute for compliance. The order commands that "defendants immediately implement the following *objective non-discriminatory* standards[.]" *Hayes* order, p. 2. The three phase process must be both objective and non-discriminatory. The process will not be objective if Thrower is mechanically reappointed for reasons other than the best interest of Bastrop High School. Defendants maintained in their briefs that "Thrower ... was the person best capable of meeting the needs of Bastrop High School at the time the principal position was vacant." Def.'s Mem. in Sup. of Def.'s Mot. for Sum. Jmt., p. 3. The position is now vacant again, and defendants are not free to decide who the "person best capable of meeting the needs of Bastrop High School" is without conducting a fair and impartial *Hayes* proceeding. We suggest they do so.

---

4. This would be the easiest way for the defendants to insulate themselves from any dam-

## IV.

The parties agree what the material facts are; their dispute extends only to what interpretation should be given to those facts. We hold that the *Hayes* order requires the defendants to hold a *Hayes* proceeding any time they must fill a position of principal, assistant principal, counselor or supervisor. We additionally conclude that defendants promoted Thrower from supervisor to principal. Defendants' conduct contravened not only the plain language of the order, but also their own interpretation of it. We, therefore, find the defendants in contempt. Finally, we order the defendants to comply with such relief granted herein.

---

ages caused by their possible breach of Thrower's four year contract.